**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
:
In re:                                               :          **FOR PUBLICATION**
:
ALL YEAR HOLDINGS LIMITED,                           :          Chapter 11
:
Debtor.                        :          Case No. 21-12051 (MG)
:
:
:
------------------------------------------------------------------ x
:
ZELIG WEISS,                                         :
:
Plaintiff,                      :
:
v.                              :          Adv. Proc. No. 22-01115 (MG)
:
:
ALL YEAR HOLDINGS LIMITED, YG WV LLC,                :
:
Defendants, and                 :
:
WYTHE BERRY MEMBER LLC,                              :
:
Nominal Defendant.             :
------------------------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

*A P P E A R A N C E S :*

PAUL HASTINGS LLP
*Counsel for Plaintiff Zelig Weiss*
200 Park Avenue
New York, New York 10166
By:     Kristopher M. Hansen, Esq.
Nicholas A. Bassett, Esq.
Jason M. Pierce, Esq.
Shlomo Maza, Esq.
Will Clark Farmer, Esq.

WEIL, GOTSHAL & MANGES LLP
*Counsel for Defendant All Year Holdings Limited*
767 Fifth Avenue
New York, New York 10153
By:    Gary T. Holtzer, Esq.
        Matthew P. Goren, Esq.
        Robert S. Berezin, Esq.
        Richard D. Gage, Esq.
        Angelo G. Labate, Esq.

HERRICK, FEINSTEIN LLP
*Counsel for Defendant All Year Holdings Limited*
2 Park Avenue
New York, NY 10016
By:    Stephen B. Selbst, Esq.
        Avery S. Mehlman, Esq.
        Janice Goldberg, Esq.
        Rodger T. Quigley, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court are two motions.  All Year Holdings Limited ("All Year"), the debtor in the main Chapter 11 case (Case No. 21-12051), along with its wholly-owned subsidiary YG WV LLC ("YGWV"), and Wythe Berry Member LLC ("Member LLC," and together with All Year and YGWV, the "Defendants,") have moved to dismiss all claims in the amended complaint ("Complaint," ECF Doc. # 10)[1] filed by Plaintiff Zelig Weiss (the "Plaintiff"). ("Motion to Dismiss," ECF Doc. # 21.)  Plaintiff opposes the Motion to Dismiss and has also moved for partial summary judgment on Claim III of its Complaint.  ("Motion for Partial Summary Judgment," ECF Doc. # 11.)

Claims I through III in the Complaint seek declaratory judgments that: (I) All Year's transfer of interests in YGWV violates the Member LLC Agreement and Delaware Law

---

[1]    All references to the "Complaint" are to the Amended Complaint (ECF Doc. # 10) unless otherwise noted.

(Complaint, ¶¶ 86–101); (II) All Year's transfer of interests in YGWV violates the implied

covenant of good faith and fair dealing (*id.* ¶¶ 102–106); and (III) YGWV is dissolved and may

not effectuate the transfer of its interests or manage Member LLC. (*Id.* ¶¶ 107–125). Claim IV

seeks to enjoin Defendants from transferring All Year's interests in YGWV (*id.* ¶¶ 126–134);

and Claim V seeks to enjoin All Year and YGWV from acting as managers of Member LLC.

(*Id.* ¶¶ 135–142).

For the reasons explained below, the Court **GRANTS** Defendants' Motion to Dismiss

Plaintiff's Complaint. Accordingly, the Court **DENIES** Plaintiff's Motion for Partial Summary

Judgment on Claim III.

## I.   BACKGROUND

### A.  The Parties and Original William Vale Ownership

This action relates to a dispute between individuals and entities with direct and indirect

ownership interests in the William Vale, a luxury hotel property and community space in

Brooklyn (the "WV Complex"). (Compl. ¶ 2.) According to the Complaint, Plaintiff Zelig

Weiss originally conceived of and developed the WV Complex. (*Id.*) Weiss invited Yoel

Goldman ("Goldman"), former principal of All Year, to join him in the venture, and the two

became co-owners of Wythe Berry LLC ("WB LLC"). (*Id.* ¶ 24.) WB LLC operated and held

title to the WV Complex. Plaintiff and Goldman each owned 50% of WB LLC, and Plaintiff

served as the managing member. (*Id.* ¶ 24.)

According to Plaintiff, Goldman's only role in WB LLC was to provide and/or arrange

for its funding. (*Id.* ¶ 24.) In approximately September 2016, WB LLC required a refinancing

transaction as the WV Complex finished construction, and Goldman proposed raising the funds

needed by issuing bonds on the Israeli market. (*Id.* ¶ 25.) Goldman's proposal entailed using

and/or creating additional entities to execute the refinancing transaction. First, Goldman

proposed to use All Year to issue a bond series (the "Series C Bonds") tied exclusively to the

WV Complex.  (*Id.* ¶ 27.)  All Year then would cause the proceeds of the bond issuance to be

used to pay off/refinance an existing mortgage on the WV Complex and debts of WB LLC.  (*Id.*)

Next, the proposed transaction involved transferring title of the WV Complex to a new entity,

Wythe Berry Fee Owner, LLC ("Fee Owner"), with Fee Owner leasing the WV Complex back to

WB LLC.  (*Id.* ¶ 28.)  Finally, Member LLC was created to become the exclusive owner of Fee

Owner, with Weiss and Goldman each owning 50% of Member LLC, either individually or

through other entities.  (*Id.*)

### B.  The Member LLC Agreement and Creation of YGWV

Today, Plaintiff holds his 50% interest in Member LLC directly.  Goldman's 50%

interest in Member is owned by YGWV, which, in turn, is a wholly owned subsidiary of All

Year.  (*Id.* ¶ 3.)  YGWV is the managing member of Member LLC.  (*See id.* ¶ 37.)  In his

Complaint, Plaintiff explains that at earlier phases of the transaction, the parties first

contemplated Goldman holding his 50% in Member LLC through All Year.  (*Id.* ¶ 31–32.)

Indeed, Plaintiff claims that All Year, through authorized representatives, negotiated the Member

LLC agreement, and that YGWV was created during negotiations to serve as an intermediary

and slotted into the draft Member LLC agreement in place of All Year.  (*Id.* ¶ 32–38.)  All Year

established YGWV on or about February 1, 2017, upon the filing of articles of organization with

the New York Secretary of State, and the YGWV LLC Agreement was executed on February 28,

2017.  (*Id.* ¶ 88.)   The Member LLC Agreement was executed that same day between YGWV

and Plaintiff.  (*Id.* ¶ 40.)

Plaintiff alleges that, despite YGWV being the final signatory to the Member LLC

Agreement, all essential terms of the Member LLC Agreement were negotiated and agreed upon

between All Year and Plaintiff before the formation of YGWV, and that All Year conducted

4

these negotiations through its authorized representatives, including All Year's Chief Financial Officer, Yizhar Shimoni ("Shimoni"). (*Id.* ¶¶ 31, 38.) Plaintiff further alleges that, regardless of the ownership structure, Plaintiff and Goldman's intentions were to co-own and operate the WV Complex exclusively with one another. (*Id.* ¶ 4.)

### C. The Closing of the Refinancing Transaction

Following the creation of YGWV and the execution of the Member LLC Agreement, Goldman and Shimoni proceeded with the refinancing proposal, and Mishmeret Trust Company Ltd. ("Mishmeret"), as Trustee for the Series C Bondholders, eventually loaned the equivalent of $166,320,000 worth of New Israeli Shekels to All Year. (*Id.* ¶ 35.) All Year, in turn, loaned those funds (in dollars) to Fee Owner to be used for the payment of the debts of WB LLC, including the existing mortgage loan. (*Id.* ¶ 36.) Fee Owner issued to All Year a $166,320,000 promissory note and a mortgage against the WV Complex (respectively, the "Note" and "Mortgage"). All Year collaterally assigned the Note and Mortgage to Mishmeret to secure the Series C Bonds. (*Id.* ¶ 36.)

### D. Plaintiff's Attempts to Purchase YGWV and All Year's Bankruptcy

According to Plaintiff, he made an offer to purchase All Year's membership interest in YGWV on or about November 2, 2021, before All Year's filing of a voluntary Chapter 11 petition on December 14, 2021. *See In re All Year Holdings Ltd.*, Case No. 21-12051 (ECF Doc. # 1); (*Id.* ¶ 36.) Plaintiff continued to negotiate to purchase All Year's interest in YGWV, but the negotiations evolved into a draft Membership Interest Purchase Agreement (MIPA), whereby Plaintiff would purchase YGWV's interest in Member LLC, as opposed to All Year's interest in YGWV. (*Id.* ¶ 63–65.) After the MIPA was revised to require approval by this Court, Plaintiff claims that All Year and Plaintiff agreed on all terms of the revised MIPA and, with All Year's

knowledge and approval, Mishmeret published the revised MIPA as an exhibit to a filing it made

on the Tel Aviv Stock Exchange on or about March 27, 2022.  (*Id.*  ¶ 69.)

**E.  The Switch to Paragraph and the Proposed Reorganization Plan**

Plaintiff claims that All Year decided to abandon the transaction with him, and, instead,

in or about April 2022, agreed to sell All Year's interest in YGWV to Paragraph Partners LLC

("Paragraph") for essentially the same consideration offered by Plaintiff.  (*Id.* ¶ 69.)

All Year filed a Chapter 11 Plan of Reorganization (the "Plan") on May 31, 2022, with

Paragraph as the Sponsor.  *See In re All Year Holdings Ltd.*, Case No. 21-12051 (ECF Doc. #

123).  Under the Plan, All Year seeks approval of an Investment Agreement dated March 11,

2022, by and among All Year, Paragraph, and, solely with respect to certain specified sections,

Mishmeret, as trustee (the "Investment Agreement").  (*Id.* ¶ 77.)

Amendment 1 to the Investment Agreement provides that, if Paragraph closes on a

separate transaction to acquire the outstanding promissory note and mortgage related to the WV

Complex from Mishmeret, All Year will sell to Paragraph its membership interests in YGWV for

$200,000.  (*Id.* ¶ 78.)  Consistent with the Investment Agreement, the initial proposed disclosure

statement dated May 31, 2022 stated that the proposed Plan would "provide for the automatic

transfer of [All Year's] interests [in YGWV] to the Sponsor."  (*Id.* ¶ 79, n. 10.)

The Plan also contemplates All Year's possible transfer of the YGWV interests to Wind-

Down Co., a new entity to be managed by a plan administrator at the direction of Mishmeret, if

the Sponsor's agreement to acquire the note and mortgage does not close before the effective

date of the Plan.  (*Id.* ¶ 82.)  This is important because Plaintiff alleges that Sponsor and

Paragraph failed to close on its purchase of the note and mortgage by the July 24, 2022 outside

date under such agreement, and that Mishmeret has declared that Sponsor breached the

agreement.[2]  (*Id.*)

### F.  Plaintiff's Allegations Regarding YGWV and the Transfer of All Year's Interests in YGWV

Plaintiff filed the operative Complaint seeking declaratory and injunctive relief to stop

the transfer of All Year's interest in YGWV, whether to Paragraph under the MLPSA, or to

Wind-Down Co. under the Plan, if the MLPSA does not close.  (*Id.* ¶ 80–82.)

The thrust of Plaintiff's Complaint is that a transfer of the interests in YGWV would

violate the Member LLC Agreement between Plaintiff and YGWV, which provides that "a

Member may not assign in whole or in part any interest in the Company without the written

consent of the other Members" and "[i]f a Member assigns an interest in the Company in

violation of this Section . . . , such assignment shall be null and void and such Member shall be

liable to the Company for breach of this Agreement."  ("Member LLC Agreement," ECF Doc. #

10-1, Ex. A to Compl. at § 8.1(a).)  Plaintiff alleges that he only permitted All Year's wholly-

owned subsidiary, YGWV, to become the titular Managing Member of Member LLC (which

effectively made All Year the manager of Fee Owner) in reliance on the fact that the Member

LLC Agreement would prohibit a transfer of YGWV's membership interests in Member LLC

without Plaintiff's consent.  (*Id.*  ¶ 37.)  This provision was important to Plaintiff because he

---

[2]       The parties submitted letter briefs to the Court explaining the effect the purported failure to close on the agreement—that they now refer to as the Mortgage Loan Purchase and Sale Agreement (or "MLPSA")—would have on this proceeding.  *See In re All Year Holdings Ltd.*, Case No. 21-12051 (ECF Doc ## 201–204).  Paragraph took the position that the MLPSA has *not* been terminated.  (*See* Ltr. on behalf of Paragraph Partners LLC, dated Sept. 6, 2022, ECF Doc. # 202).
        In a recent development, at a Court hearing on September 29, 2022, the Debtor's counsel announced that a proposed settlement has been reached in a mediation between the Debtor, the Sponsor and Mishmeret, resolving all issues between those parties.  The proposed settlement will be described in an amended disclosure statement and plan.  Weiss and his counsel participated in the mediation, but no settlement of Weiss' claims has been reached.

wanted to partner specifically with Goldman/All Year on the hotel project, as he had done for years through WB LLC, and not anyone else.  (*Id.*)

To support his legal arguments regarding All Year's domination of YGWV, Plaintiff also makes a series of allegations about the entities, including that: (a) "YGWV keeps no corporate records" (*id.* ¶ 92), "YGWV keeps no minutes of meetings discussing or recording its corporate affairs" (*id.* ¶ 56), "YGWV has never filed its mandatory biennial statement under New York's Limited Liability Company Law" (*id.* ¶ 57), and "at all relevant times, YGWV did not observe basic corporate formalities" (*id.*); (b) "YGWV has never had a bank account" (*id.* ¶ 52), "YGWV does not receive revenue from operations (it has none), distribute monies to pay expenses, or transfer funds within its corporate family" (*id.* ¶ 53), and "at all relevant times, All Year paid, or arranged for All Year or an affiliate of All Year to pay, expenses incurred by YGWV" (*id.*); (c) "YGWV has no assets other than its interest in Fee Owner" (*id.* ¶ 58), and "[a]t all relevant times, YGWV was undercapitalized" (*id.* ¶ 54); (d) "[a]t all relevant times, YGWV has not had its own office of employees" but, rather, "YGWV's business address, as admitted in [All Year]'s schedules, and address for service of process is 199 Lee Ave., #693, Brooklyn, New York 11211—the location of All Year's principal offices" (*id.* ¶ 55); (e) "YGWV has no employees or directors, and any agents of YGWV are not independent from All Year" (*id.* ¶ 92); (f) "at all relevant times, All Year has made all decisions by YGWV regarding its interest in Member LLC, Fee Owner, and the WV Complex," which "All Year made . . . for its own benefit, without regard to YGWV's purported corporate separateness" (*id.* ¶ 59); (g) "[o]ther than holding [All Year's] membership interest [in Member LLC], YGWV has never conducted any business and has no operations" (*id.* ¶ 51); and (h) "all revenue generated by the WV Complex is paid directly to All Year, not YGWV" (*id.* ¶ 93).

## II.  **LEGAL STANDARD**

### A.  **Dismissal Under Fed. R. Civ. P. 12(b)(6)**

Defendants moved to dismiss Claims I through V from the Complaint.  To survive a

motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable

here by Rule 7012 of the Federal Rules of Bankruptcy Procedure, a complaint need only allege

"enough facts to state a claim for relief that is plausible on its face."  *Vaughn v. Air Line Pilots

Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(emphasis removed)).  "Where a complaint pleads facts that are merely consistent with a

defendant's liability, it stops short of the line between possibility and plausibility of entitlement

to relief."  *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).  Plausibility "is

not akin to a probability requirement," but rather requires "more than a sheer possibility that a

defendant has acted unlawfully."  *Id.* (citation and internal quotation marks omitted).

Courts use a two-prong approach when considering a motion to dismiss.  *Pension Benefit

Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (stating that

the motion to dismiss standard "creates a 'two-pronged approach' . . . based on '[t]wo working

principles'") (quoting *Iqbal*, 556 U.S. at 678–79); *McHale v. Citibank, N.A. (In re the 1031 Tax

Grp., LLC)*, 420 B.R. 178, 189–90 (Bankr. S.D.N.Y. 2009).  First, the court must accept all

factual allegations in the complaint as true, discounting legal conclusions clothed in factual garb.

*See, e.g.*, *Iqbal*, 556 U.S. at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124

(2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual

allegations in the complaint to be true") (citing *Iqbal*, 556 U.S. at 678).  Second, the court must

determine if these well-pleaded factual allegations state a "plausible claim for relief."  *Iqbal*, 556

U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).  A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted).  A complaint that pleads only facts that are "merely consistent with" a defendant's liability does not meet the plausibility requirement. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).  On a motion to dismiss, in addition to the complaint, a court may consider written instruments, such as a contract, that are either attached to the complaint or incorporated by reference. *See, e.g.*, FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Official Comm. of Unsecured Creditors v. Conseco Fin. Servicing Corp. (In re Lois/USA, Inc.)*, 264 B.R. 69, 89 (Bankr. S.D.N.Y. 2001) ("In addition to the complaint itself, a court may consider, on a motion to dismiss, the contents of any documents attached to the complaint or incorporated by reference . . . .").

### B.  Summary Judgment Under Fed. R. Civ. P. 56(c)(1)(A)

Plaintiff has also moved for summary judgment on Claim III, pursuant to Federal Rule of Civil Procedure 56(c)(1)(A), which is applicable in this proceeding pursuant to Federal Rule of Bankruptcy 7056.  To prevail on a motion for summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The movant bears the burden of demonstrating the absence of a question of material fact.  In making this determination, the Court must view all

facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted). Rather, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." FED. R. CIV. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)) (internal quotation marks omitted). To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." FED. R. CIV. P. 56(c)(1)(A).

Where the facts are not in dispute and the issues contested in a summary judgment motion are legal issues, the court may decide the legal issues and rule accordingly on the summary judgment motion. *See Official Comm. of Unsecured Creditors of Quebecor World (USA) Inc. v. Am. United Life Ins. Co. (In re Quebecor World (USA) Inc.)*, 453 B.R. 201, 211

(Bankr. S.D.N.Y. 2011) (stating that because "the facts are not in dispute, . . . it is appropriate to determine the legal issues under the summary judgment standard").

## III.   DISCUSSION

Claims I through III seek declaratory judgments that: (I) All Year's transfer of interests in YGWV violates the Member LLC Agreement and Delaware Law; (II) All Year's transfer of interests in YGWV violates the implied covenant of good faith and fair dealing; and (III) YGWV is dissolved and may not effectuate the transfer of its interests or manage Member LLC.

Claim IV seeks to enjoin Defendants from transferring All Year's interests in YGWV, and Claim V seeks to enjoin All Year and YGWV from acting as manager of Member LLC.

For the reasons explained below, Plaintiff fails to plead an adequate basis for relief in Claims I through V, and accordingly Defendants' Motion to Dismiss is **GRANTED.** Consequently, Plaintiff's Motion for Partial Summary Judgment on Claim III is also **DENIED**.

### A.  Claim I

Claim I of the Complaint seeks a declaratory judgment that any direct or indirect transfer of all or any part of All Year's membership interests in YGWV without Plaintiff's express consent is prohibited by the Member LLC Agreement and shall be null and void.  (*See* Complaint ¶ 101.)  All Year, however, is not a signatory to the Member LLC Agreement. Plaintiff argues that All Year is nevertheless bound by the Member LLC Agreement for two independent reasons.[3]  First, Plaintiff argues that All Year is bound by the Member LLC Agreement because YGWV is All Year's alter ego.  (Complaint ¶ 9.)  Second, Plaintiff argues that All Year is also bound because All Year—through its principal at the time, Goldman— extensively negotiated the Member LLC Agreement as Plaintiff's true counterparty and, thereby,

---

[3]    Claim I in the Complaint is sought against all Defendants, but the allegations (*see* Complaint ¶¶ 86-101), and Plaintiff's argument (*see* Plaintiff Reply Brief ¶ 28), are actually only directed at All Year.

manifested All Year's intent to be bound by the agreement. (*Id.* ¶ 8.) Plaintiff fails to state a claim under either theory, and as a result, Claim I must be dismissed.

      1.  <u>Plaintiff Does Not Adequately Plead an Alter Ego Theory</u>

Under New York law,[4] "a party who is not a signatory to a contract generally cannot be held liable for breaches of that contract." *TransformaCon, Inc. v. Vista Equity Partners, Inc.*, 2015 WL 4461769, at *3 (S.D.N.Y. July 21, 2015). As an exception to that general rule, a court may "pierce the veil" and bind a non-signatory to a contract's terms where the non-signatory "exercised complete control over a signatory and employed that domination to injure another signatory to the agreement." *Boroditskiy v. European Specialties LLC*, 314 F. Supp. 3d 487, 494 (S.D.N.Y. 2018) (citation and internal quotation marks omitted). Under New York law, "a court may pierce the corporate veil where (i) 'the owner exercised complete domination over the corporation with respect to the transaction at issue,' and (ii) 'such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil.'" *Id.* (citing *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)). New York courts generally consider the following factors in determining whether domination by a non-signatory is present under the first prong:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or

---

[4]     The parties agree that New York law controls the alter ego analysis because YGWV is organized under New York law. *See, e.g., Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995); (Motion to Dismiss at 7); ("Plaintiff Reply Brief," ECF Doc. # 35, at 13 n.11).

> guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 386 F. Supp. 2d 461, 471–72 (S.D.N.Y. 2005) (quoting *Wm. Passalacqua Builders, Inc. v. Resnick*, 933 F.2d 131, 139 (2d Cir.1991)).

Specifically, a Plaintiff may bring a breach of contract claim against a counterparty-signatory's parent entity where the counterparty-signatory has been so dominated and "its separate identity so disregarded" that the counterparty-signatory "primarily transacted the dominator's business rather than its own and can be called the other's alter ego." *Walpert v. Jaffrey*, 127 F. Supp. 3d 105, 130 (S.D.N.Y. 2015) (quoting *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 411 (S.D.N.Y. 2012)).

Here, Plaintiff alleges that All Year seeks to use its complete dominance and control of YGWV to perpetrate the alleged wrong challenged by Plaintiff—an "end run" around the Member LLC Agreement's transfer restrictions, via any transfer by All Year of its own interests in YGWV. (Plaintiff Reply Brief ¶ 34.) Plaintiff's allegations are insufficient to state a claim under an alter ego theory, however, as they do not allege that All Year dominated YGWV with respect to the transaction at issue, or that All Year "commit[ed] a fraud or wrong that injured the party seeking to pierce the veil." *MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir. 2001) (quoting *Am. Fuel Corp.*, 122 F.3d at 134) (internal quotation marks omitted).

Plaintiff's Complaint contains a series of allegations with respect to the first factor—whether All Year exercised complete domination over YGWV, generally. To summarize, Plaintiff: (1) attacks YGWV's lack of record-keeping, filings, bank accounts, and other corporate

formalities; (2) alleges that YGWV does not receive revenue, make payments for expenses, have

adequate capitalization, or any assets/business besides the Member LLC interest; (3) claims that

YGWV does not have any unique personnel and that All Year exercises all decision-making for

the entity.[5]

Plaintiff includes sufficient allegations that All Year dominates YGWV as a general

matter.  Defendants point out that many of the allegations are made on information and belief,

and others appear to be conclusory recitations of the legal factors.  (Motion to Dismiss at 10.)

While they are right with respect to certain allegations, overall, Plaintiff's Complaint contains

allegations that cover most, if not all, of the relevant factors for any transaction that YGWV *was

allegedly involved in*, such that it could satisfy Federal Rule of Civil Procedure 8(a)'s liberal

pleading standard.  *See CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 316 F. Supp. 3d 635,

647 (S.D.N.Y. 2018).

But there is a lingering problem with Plaintiff's allegations for the first prong.  As

Defendants observe, there are no allegations here regarding domination with respect to the

challenged transaction—the transfer of All Year's interest in YGWV to another entity.  And

based on the allegations in the Complaint, that makes sense because there is no ostensible role

for YGWV to play in that transaction.  Even if Plaintiff's general allegations regarding All

Year's control of YGWV could be construed as related to a transfer of interests in which YGWV

has no active role, Plaintiff suffers from pleading issues for the second prong that are also a

result of YGWV's lack of involvement in the transaction.

Plaintiff's allegations fail with respect to the second prong because they do not

adequately allege that an actionable "fraud or wrong" occurred or will occur as a result of the

---

[5]       *See* Plaintiff Reply Brief ¶ 32 (citing to Complaint ¶¶ 52-59; 92-93).

transfer of interests from All Year to another entity.  In Plaintiff's cited cases, the allegations

involved domination by a non-signatory affiliate that rendered the signatory entity

undercapitalized or unable to perform contractual obligations at the expense of its contractual

counterparties.[6]  As an initial matter, "it is well-established that an ordinary 'breach of contract,

without evidence of fraud or corporate misconduct, is not sufficient to pierce the corporate veil.'"

*Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*, 270 F. Supp. 3d 716, 732

(S.D.N.Y. 2017) (quoting *Am. Federated Title*, 126 F. Supp. 3d at 403).

Here, Plaintiff fails to allege a "fraud or wrong" that impairs YGWV's ability to conduct

business or make good on obligations at Plaintiff's expense in line with its cited cases.

Moreover, Plaintiff fails to allege that All Year even caused YGWV to breach contractual

obligations.  Section 8.1 of the Member LLC Agreement states that "a Member may not assign in

whole or in part any interest in the Company without the written consent of the other Members."

(Member LLC Agreement, § 8.1(a).)  Here, Plaintiff does not allege that YGWV plans to

transfer its interest in Member in violation of the agreement, let alone any other "fraud or

wrong."  *Cf. Maltz v. Union Carbide Chems. & Plastics Co., Inc.*, 992 F. Supp. 286, 303

(S.D.N.Y. 1998) (plaintiff pleaded a wrong where controlling entity sold controlled entity to an

unfit purchaser in "*in derogation* of a specific contractual term").

Plaintiff effectively argues that if he can plead general domination for the first prong, that

All Year's failure to adhere to any of YGWV's contractual obligations will then automatically

---

[6]       *See, e.g.*, *Cortlandt St. Recovery Corp. v. Bonderman*, 96 N.E.3d 191, 203-204 (N.Y. 2018) (controlling entity obtained proceeds of notes issued by controlled entity via fraudulent conveyances, leaving controlled entity unable to pay creditors); *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 39 F. Supp. 3d 516, 526-27 (S.D.N.Y. 2014) (controlling entity created shell company for purpose of leasing property, collecting sublease rents, deferring its own lease payments, and breaching lease after being made judgment proof by management fees paid to controlling entity); *JSC Foreign*, 386 F. Supp. 2d at 475-76 (controlling entity diverted funds to render the controlled entity judgment proof before it entered into a contract with obligations that it could not meet due to diverted funds).

constitute a "wrong."  But this is not sufficient to meet the second prong's requirements and the

"heavy burden" necessary to disregard the corporate form.  *TNS Holdings, Inc. v. MKI Sec.*

*Corp.*, 92 N.Y.2d 335, 339 (1998).

      2.   Plaintiff Does Not Adequately Plead an "Intent to be Bound" Theory

Plaintiff argues that even if All Year is not the alter ego of YGWV, All Year is liable for

a breach of the Member LLC Agreement because it expressed an "intent to be bound" by the

Agreement.  (Complaint ¶ 90.)  Plaintiff argues that the "intent to be bound" theory is distinct

from the alter ego theory.  (Plaintiff Reply Brief ¶ 28.)  Plaintiff fails to plead a claim against All

Year under this theory as well.

It is a "basic tenant of contract law that the existence of a contract depends on whether

the parties intended to be bound, considering the 'objective manifestations of the intent of the

parties as gathered by their expressed words and deeds.'" *MBIA Ins. Corp. v. Royal Bank of*

*Can.*, 706 F. Supp. 2d 380, 398 (S.D.N.Y. 2009) (quoting *Brown Bros. Elec. Contractors, Inc. v.*

*Beam Constr. Corp.*, 41 N.Y.2d 397, 393 N.Y.S.2d 350, 361 N.E.2d 999, 1001 (1977)).  Plaintiff

argues that a parent can be bound to a contract of its subsidiary, even when the parent is a non-

signatory, if the parent manifests an intent to be bound.  Specifically, Plaintiff appears to argue

that All Year and Goldman's involvement in the negotiation of the Member LLC Agreement on

YGWV's behalf demonstrates an intent to be bound by that Agreement.  There are multiple

issues with Plaintiff's argument.

First, Plaintiff's leading New York case, *Horsehead Indus., Inc. v. Metallgesellschaft*

*AG*, does not lend clear support for Plaintiff's "intent to be bound" theory as distinct from the

alter ego theory.  657 N.Y.S.2d 632 (1st Dep't 1997).  While *Horsehead* proposes that a parent

entity's involvement in negotiations can evince an intent to be bound, *see id.* at 633, the cases it

cites for support qualify that is only the case "if the subsidiary is a dummy for the parent

corporation."[7]  Indeed, the case appears to have been decided on the basis that the plaintiff

successfully stated a claim under an alter ego theory.  *See Horsehead Indus.*, 657 N.Y.S.2d at

633.

Second, Plaintiff overstates the effect of the parents' presence during negotiations in

subsequent cases where courts found that parents manifested intent to be bound to their

subsidiaries' contracts.  Specifically, the cases cited by Plaintiff contained additional allegations

beyond the parents' involvement in negotiations that evinced an intent to be bound by the

subsidiaries' contracts.[8]  Inherent in each of these cases was a situation where, in each court's

view, it was objectively reasonable for a party to a contract to believe that a non-signatory was

bound due to the non-signatory's words or conduct.

Here, Plaintiff fails to make any allegations regarding All Year's words or conduct

evincing an intent to be bound by the Member LLC Agreement, beyond the fact that the same

personnel that represented All Year also represented YGWV.  More importantly, Plaintiff's own

allegations show that All Year made objective manifestations *not* to be bound, when it proposed

removing itself as a party from the draft Member LLC agreement and YGWV was included in its

place.[9]  (Complaint ¶ 32–38.)  This case is distinct from Plaintiff's cases where a parent's

involvement in and outside of negotiations objectively communicated some contractual

responsibility for the subsidiary.  More applicable here are New York cases refusing to find a

---

[7]       *Warnaco, Inc. v. VF Corp.*, 844 F. Supp. 940, 946 (S.D.N.Y. 1994) (citing to *A.W. Fiur Co. v. Ataka & Co.*, 71 A.D.2d 370, 373-74 (1st Dep't 1979)).

[8]       *See, e.g., SHLD, LLC v. Hall*, 2016 WL 659109, at *8 (S.D.N.Y. Feb. 17, 2016) (parent executed collateral non-disclosure agreement with plaintiff in which it undertook obligations related to transaction); *Impulse Mktg. Grp. Inc. v. Nat'l Small Bus. All.*, 2007 WL 1701813 at *6 (S.D.N.Y. June 12, 2007) (parent assumed contract by informing plaintiff that it was the real party in interest and making direct payments to plaintiff).

[9]       As Debtors observed during oral argument, other sections of the Member LLC Agreement, like Section 11.4, also militate towards a finding that the parties contemplated that All Year, as the lender, would be a distinct and separate entity from YGWV.  (*See* Member LLC Agreement, § 11.4).

parent liable where the negotiations themselves served to *clarify* the parent's lack of liability for the subsidiary's obligations.[10]

Finally, Plaintiff's arguments regarding the effect of a parent's involvement in negotiations under the "intent to be bound" theory cannot be squared with the caselaw regarding alter ego liability. Under the alter ego caselaw "[a]llegations of complete ownership, common officers and personnel, and shared office space are, without more, insufficient" to impose contractual liability on a parent for its subsidiary. *Vibes Int'l Inc., SAL v. Iconix Brand Grp.*, 2020 WL 3051768, at *8 (S.D.N.Y. June 8, 2020). Under Plaintiff's "intent to be bound" theory, however, an overlap in ownership and personnel that necessarily results in the parent's involvement in its subsidiary's negotiations would always result in contractual liability for the parent. This reading of the "intent to be bound" caselaw would completely swallow the alter ego theory that it serves as a purported alternative to.

### B. Claim II

For Claim II, Plaintiff seeks a declaratory judgment that Defendants are violating the covenant of good faith and fair dealing. This claim for breach is brought against both YGWV directly, as well as All Year, under Plaintiff's theories for alter ego and intent to be bound. Plaintiff fails to state a claim for the breach of implied covenant against both parties.

"Under Delaware law, an implied covenant of good faith and fair dealing inheres in every contract." *Chamison v. HealthTrust, Inc. – The Hosp. Co.*, 735 A.2d 912, 920 (Del. Ch. 1999).

---

[10]    *See Skanska USA Bldg. Inc. v. Atlantic Yards B2 Owner, LLC*, 40 N.Y.S.3d 46, 54, 146 A.D.3d 1 (1st Dep't 2016) ("Nowhere in the complaint does plaintiff allege that it believed it was contracting with or had rights vis-à-vis [parent] or any entity other than [subsidiary]. Indeed, plaintiff could have negotiated for such rights. Having failed to do so, plaintiff cannot now claim that it was tricked into contracting with [subsidiary] only and thus should be allowed to assert claims against [parent]."); *see also Spectra Secs. Software, Inc. v. MuniBEX.com, Inc.*, 307 A.D.2d 835, 763 N.Y.S.2d 313, 314–15 (1st Dep't 2003) (stating that "[t]he Definitive Agreement entered into between plaintiff and [subsidiary] was the product of substantial negotiations, which included discussions on the very issue of [subsidiary] executing the Definitive Agreement," as opposed to the parent entity).

To sustain a claim for a breach of the implied covenant, a plaintiff "must allege a specific

implied contractual obligation, a breach of that obligation by the defendant, and resulting

damage to the plaintiff." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009)

(quoting *Fitzgerald v. Cantor,* 1998 WL 842316, at *1 (Del. Ch. Nov.10, 1998)). "The implied

covenant of good faith and fair dealing embodies the law's expectation that 'each party to a

contract will act with good faith toward the other with respect to the subject matter of the

contract.'" *SerVaas v. Ford Smart Mobility LLC*, 2021 WL 3779559 at *8 (Del. Ch. Aug. 25,

2021) (quoting *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1032 (Del. Ch.

2006)). A claim for breach of the implied covenant will only lie "'in that narrow band of cases

where the contract as a whole speaks sufficiently to suggest an obligation and point to a result,

but does not speak directly enough to provide an explicit answer.'" *In re Zohar III, Corp.*, 631

B.R. 133, 202 (Bankr. D. Del. 2021) (quoting *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d

126, 146 (Del. Ch. 2009)).

With respect to All Year, Plaintiff cannot assert a claim for a breach of the implied

covenant because, as discussed *supra*, All Year is not a party to the contract. *See Bandera*

*Master Fund LP v. Boardwalk Pipeline Partners, LP*, 2019 WL 4927053, at *21 (Del. Ch. Oct.

7, 2019).

Plaintiff also fails to make out a claim for breach of the implied covenant against YGWV,

as the agreement provides an explicit (and no implicit) answer on transfers in ownership. Here,

Plaintiff's alleges that by "agreeing to the YGWV Interest Transfer scheme, Defendants have

failed to deal honestly and fairly and will violate this implied covenant." (Complaint ¶¶ 105–

106.) The agreement in question, however, already contains explicit provisions that describe

YGWV's obligations with respect to assignments of YGWV's interests, and only speaks to

limitations on YGWV's—not its parent organization's—ability to transfer its interest.  (Member LLC Agreement, § 8.1(a).)

Plaintiff cites authority for the proposition that the "goal" of the implied covenant is to "preserve the economic expectations of the parties," *Glaxo Grp. Ltd. v. DRIT LP*, 248 A.3d 911, 919 (Del. 2021), and alleges that it was always his expectation that he "wanted to partner specifically with Goldman/All Year on the hotel project, as he had done for years through WB LLC, and not anyone else."  (Complaint ¶ 37.)  Plaintiff, however, overlooks the fact that this authority also limits this to "instances when parties fail to foresee events not covered by their agreement" and are "addressing gaps in their agreement." *Glaxo Grp. Ltd.*, 248 A.3d at 919.

A change in the ownership interests on YGWV's side of the LLC was clearly foreseen by the parties.  This is evidenced not only by Section 8.1 of the Member LLC Agreement, but by Plaintiff's own Complaint, which alleges that at one point in the negotiations All Year was contemplated as the other member to the LLC Agreement, which would have comported with Plaintiff's claimed "economic expectations."  (*See* Plaintiff Reply Brief at ¶ 46.)  Nevertheless, Plaintiff allowed for the substitution of YGWV in place of All Year and executed the agreement. (Complaint ¶ 3.)  A court "should not employ the implied covenant to re-write an agreement or rebalance economic interests after events that could have been anticipated, but were not, later adversely affect a party." *In re Zohar*, 631 B.R. at 201–202.[11]

---

[11]    At oral argument, Plaintiff identified *Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Oregon Ltd. P'Ship*, 840 F. Supp. 770 (D. Or. 1993)—a case not cited in the parties' briefs—as supportive.  The Court allowed the parties to submit supplemental briefs on *Oregon RSA*, which they did on September 16, 2022.  Plaintiff is correct that *Oregon RSA* presents a factually similar scenario, that involved the issue of a parent transferring its interests in a subsidiary, where the subsidiary was restricted in transferring its own interests by an LLC agreement. *Id.* at 774-75. The court found that the transfer violated the covenant of good faith and fair dealing. *Id.* at 776. *Oregon RSA* does not change the result here, however.  First, the court in *Oregon RSA* also disregarded the corporate form to hold the parent liable, which the Court has not done here.  Second, the case's persuasive force is lacking considering that Delaware courts have not followed the decision in the past thirty years, while in the meantime, controlling Delaware precedent has cautioned that the covenant is "not an equitable remedy for rebalancing economic interests that could have been anticipated." *Glaxo Grp. Ltd.*, 248 A.3d at 919 (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del.

Here, changes in ownership were expressly contemplated, rather than implied by the

Member LLC Agreement, and Plaintiff failed to negotiate for additional contractual protections

for his claimed economic expectations.  For that reason, Plaintiff fails to state a claim for breach

of the implied covenant against YGWV.

### C. Claim III

Plaintiff's argument for Claim III proceeds in two steps, and he must succeed on both

steps for the claim to survive the motion to dismiss and succeed on summary judgment.  First,

Plaintiff argues that when All Year filed for bankruptcy, its membership in YGWV was

terminated by operation of two independent sections of the New York LLC Law.  *See* NY LLCL

§§ 603(a), 701(b).  Next, Plaintiff argues that, because All Year was the sole Member of YGWV,

the termination of All Year's membership necessarily also caused the dissolution of YGWV

under NY LLCL § 701(a)(4).

Plaintiff's legal theories regarding the termination of All Year's membership are

incorrect under the first step, and thus Plaintiff fails to state a claim under Claim III.  As a result,

it is unnecessary to consider whether YGWV was dissolved for lack of having at least one active

member under NY LLCL § 701(a)(4).

### 1. All Year's Membership was Not Terminated by NYC LLCL Section 701(b)

Plaintiff argues that Section 701(b) of the NY LLC Law mandates termination of an LLC

member's membership interest upon that member's filing of a bankruptcy.  That statute reads:

> Unless otherwise provided in the operating agreement, the death,
> retirement, resignation, expulsion, bankruptcy or dissolution of any
> member or **the occurrence of any other event that terminates the
> continued membership** of any member shall not cause the limited
> liability company to be dissolved or its affairs to be wound up, and

---

2010)).  The Plaintiff cannot escape that according to his own complaint, drafts of the agreement quite literally
restricted All Year's ability to transfer its interests in Member LLC were rewritten by the parties after YGWV was
created and substituted in All Year's place.

upon the occurrence of any such event, the limited liability company
shall be continued without dissolution, unless within one hundred
eighty days following the occurrence of such event, a majority in
interest of all of the remaining members of the limited liability
company or, if there is more than one class or group of members,
then by a majority in interest of all the remaining members of each
class or group of members, vote or agree in writing to dissolve the
limited liability company.

NY LLCL § 701(b).

Plaintiff's interpretation of this section as mandating termination of All Year's interest in

YGWV is incorrect.  Plaintiff argues that the inclusion of bankruptcy in a list of "event[s] that

terminate[]" membership is a mandate that bankruptcy *must* result in termination for any member

in any LLC.  As an initial matter, it is worth nothing that Plaintiff cannot argue that bankruptcy

*always* terminates membership, given the first clause in NY LLCL § 701(b), which states that the

events purportedly result in termination "[u]nless otherwise provided in the operating

agreement."  *Id.*  Thus, the statute yields to anything contrary in an operating agreement.  For

their part, Defendants argue that a fairer reading of the statute is that bankruptcy is included in an

illustrative list of events that *may* result in an LLC member's termination, where included in the

operating agreement.  The narrower issue then becomes whether Section 701(b) mandates events

of termination when the operating agreement is silent on events of termination, explicitly, as it is

here.  *See generally* ("YGWV LLC Agreement," ECF Doc. # 10-2, Ex. B to Compl.)  The Court

concludes that it does not.

Starting with the statute itself, the obvious purpose of NY LLCL § 701(b) is to provide a

procedure to avoid dissolution if termination of a member occurs.  It is not clear under a reading

of the entire section that the legislature intended it to be an absolute authority on events that must

result in termination in the first instance.  And Plaintiff fails to cite any caselaw that supports

such a reading.  Meanwhile, Defendants at least draw some support, albeit indirect, from caselaw

interpreting NY LLCL § 701(b),[12] and by analogy to other termination events listed in NY LLCL § 701(b),[13] that generally suggests the list of events do not affirmatively create rights of termination independent of an operating agreement.

Importantly, Plaintiff's construction of NY LLCL § 701(b) also reaches results that are inconsistent with the remainder of Section 701 when applied to single-member LLCs. First, it is obvious that the list of events in the beginning of Section 701(b) contemplates the existence of other remaining members in the LLC. Finding that these are mandatory as opposed to illustrative would result in a lack of applicability to single-member LLCs, as certain termination events would make no sense (*e.g.*, expulsion) or would effectively spell dissolution for the LLC (*e.g.*, death, retirement, resignation, dissolution) as applied to single-member LLCs.

This highlights another logical inconsistency with Plaintiff's reading of the statute, as the result of his argument is that the events in the beginning of clause would not only trigger termination but would instantly result in dissolution in the context of a single-member LLC under NY LLCL § 701(a)(4). Section 701(b)—whose primary concern is not with definition of termination events, but to create a default rule *against* dissolution—cannot be construed as automatically dissolving an LLC by the occurrence of the listed termination events.

Plaintiff's reading of Section 701(b) as applied to single-member LLCs also conflicts with the statute's clear language deferring to the operating agreement on matters of termination *and* dissolution. First, the clause preceding the illustrative termination events in Section 701(b) prefaces that the remainder of the section takes effect "[u]nless otherwise provided in the

---

[12]     *See, e.g.*, *Man Choi Chiu v. Chiu*, 71 A.D.3d 646, 647 (2d Dep't 2010) (holding that Section 701(b)'s reference to expulsion does not create a basis for termination via expulsion unless provided for in the operating agreement).

[13]     For instance, All Year observes that there are no default rules in the NY LLC Laws for retirement, and that resignation is not permitted unless provided for in the operating agreement under NY LLCL § 606(a).

operating agreement."  And while nothing in the Member LLC Agreement explicitly indicates

that the bankruptcy of a member triggers their termination (*see* YGWV LLC Agreement, Art. 7),

that is ultimately unsurprising, as the LLC Agreement was clearly written in contemplation that

the LLC would only have a single member.  As a result, and unlike operating agreements for

multi-member LLCs, procedures for "terminating" its sole member would serve no conceivable

purpose.

Indeed, "termination" of a member in a single-member LLC would be akin to a

dissolution of the LLC itself.  The statute, however, empowers the LLC to define its own

dissolution events, *see* NY LLCL § 701(a)(2), which the YGWV LLC Agreement does.

Bankruptcy is not a dissolution event in the Agreement.  Nevertheless, Plaintiff's reading of NY

LLCL § 701(b) would create a hyper-technical requirement for single-member LLCs to delineate

both termination and dissolution in their LLC agreements, when there is no functional difference

between the two from their perspective.  For single-member LLCs, this interpretation serves only

to conflict with Section 701(a)(2) and work needless forfeitures in the process.

For these reasons, the Court finds that the events in NY LLCL § 701(b) do not work an

automatic termination of a member's interest, at least in the context of a single-member LLC.

### 2.  All Year's Membership was Not Assigned via NYC LLCL Section 603

Plaintiff next argues that filing of the bankruptcy petition constituted a "transfer" under

Section 541 of the Bankruptcy Code because it provides that an interest of the debtor in property

becomes property of the estate regardless of any agreement or non-bankruptcy law "that restricts

or conditions transfer of such interest by the debtor." 11 U.S.C. § 541(c)(1)(A).  In turn, plaintiff

argues that this "transfer": (1) effectuated an assignment of All Year's economic interest in

YGWV to the bankruptcy estate; (2) stripped All Year of its non-economic rights (*i.e.*,

management) in YGWV; and (3) terminated All Year's membership in YGWV, all under NY

LLCL § 603(a).  The Court finds that neither a transfer under Section 541(c)(1)(A) of the

Bankruptcy Code nor an assignment under NY LLCL § 603(a) occurred for the reasons set forth

below.

>    *a.  A Transfer Did Not Occur under Section 541 of the Bankruptcy Code When
>        All Year Filed a Bankruptcy Petition*

First, both parties recognize the applicability of *N.L.R.B. v. Bildisco & Bildisco*, which

held that a debtor in possession and the pre-petition debtor are not legally distinct entities.  465

U.S. 513, 528 (1984).  Defendants argue that under *Bildisco*, there can be no "transfer" if the pre-

petition debtor and debtor in possession are the same entity.  Plaintiff counters that *Bildisco* only

addressed whether a debtor in possession was a new entity to determine whether the debtor was

bound by a prepetition bargaining agreement, not interpretation of whether a "transfer" occurs

under Section 541 of the Code.

With no controlling precedent on point, each party cites to a case addressing whether a

Chapter 11 filing and Section 541 effect a transfer under provisions of state law or operating

agreements that contain requirements for transfers of assets.  Plaintiff points to *In re Mid-South*

*Bus. Assocs., LLC*, 555 B.R. 565, 577 (Bankr. N.D. Miss. 2016), which held that it does, and

Defendants point to *In re Nw. Co.*, 2020 WL 2121269, at *4 (Bankr. S.D.N.Y. May 1, 2020),

which held that it does not.[14]  Defendants find more reasoned support in *Nw. Co.*

First, as Judge Wiles observed in *Nw. Co.*, the court in *Mid-South* failed to provide any

supporting citation, let alone address *Bildisco*, in holding that the filing of a bankruptcy petition

and Section 541 resulted in a "disposition" of assets under the relevant operating agreement,

---

[14]     *Compare Mid-South,* 555 B.R. at 577 (holding that filing of chapter 11 petition resulted in transfer of
debtor's assets requiring approval pursuant to LLC operating agreement) *with Nw. Co.*, 2020 WL 2121269, at *4
(ruling that "the mere filing of a chapter 11 petition and the creation of a chapter 11 estate automatically amounts to
a transfer or disposition of substantially all of the Debtor's property for purposes of other laws is simply wrong.")

triggering requirements for a membership vote. *See Nw. Co.*, 2020 WL 2121269, at *3.

Additionally, it appears that *Mid-South*'s holding on that point was not vital to the decision, as

the court first held that the filing of bankruptcy was an event outside the ordinary course of

business under the operating agreement, which also required a member vote under the operating

agreement. *See Mid-South*, 555 B.R. at 577.

In contrast, the court in *Nw. Co.* observed, with support from multiple circuits, that

"courts generally reject the contention that a bankruptcy filing itself constitutes a transfer of

assets to a new entity." *See Nw. Co.*, 2020 WL 2121269, at *3 (collecting cases). Critically,

Judge Wiles observed that cases that speak of the estate as separate from the debtor "are in fact

speaking metaphorically," to effectuate the rights created for the estate under the Bankruptcy

Code. *Id.* Thus, the view that a transfer occurs from the debtor to the estate was "simply wrong,

particularly where the debtor continues as a debtor-in-possession and continues to exercise

dominion and control over its businesses and properties." *Id.*

Since Defendants find general support in *Bildisco*, and a better reasoned on-point

decision in *Nw. Co.*, the Court finds that a "transfer" did not occur upon the filing of All Year's

bankruptcy petition for purposes of triggering NY LLCL § 603(a).

     *b. A "Transfer" under Section 541 of the Bankruptcy Code Would Not
       Necessarily Force Section 603(a) into Operation Here*

There are additional problems with Plaintiff's argument, as Plaintiff does not simply ask

the Court to render a binary decision on whether the filing of the bankruptcy effected a "transfer"

of all of All Year's interests to the bankruptcy estate, as in *Mid-South*. Plaintiff asks the court to

draw an even finer distinction and hold that such a "transfer" would actually only transfer All

Year's *economic* interests—but not its *managerial* interests—to the bankruptcy estate, while

simultaneously terminating All Year's membership, all under operation of NY LLCL § 603(a).

The Court holds that even if a "transfer" occurred under Section 541 of the Code, it would not necessarily have the result Plaintiff argues for under NY LLCL § 603(a).

To begin, Plaintiff does not cite to any cases that hold filing a bankruptcy petition effects an assignment under NY LLCL § 603.  Instead, Plaintiff cites to a string of non-binding cases supporting the proposition that filing of a bankruptcy constitutes an assignment of strictly economic (as opposed to managerial) interests under what Plaintiff considers to be similar statutes.[15]  Notably, Defendants and Plaintiff only discuss these cases in the preemption context, and seem to both presume that *if* the filing of the bankruptcy petition effects a "transfer" under the precedents above, that it will also automatically effect an assignment under NY LLCL § 603(a).  It is worth considering, however, the applicability of NY LLCL § 603(a) in the instant case before jumping to the preemption analysis, as there are multiple interpretive issues that weigh against Plaintiff's argued application of Section 603(a) here.

First, each of the cases cited by Plaintiff for the applicability of NY LLCL § 603 here involved state statutes and/or operating agreements with clear language stating that a member's bankruptcy filing would result in assignee status.[16]  As discussed in Section III.C.1, the LLC agreement here suggests that is not the case, and the New York LLC Laws do not explicitly state that an LLC member's bankruptcy terminates their membership, let alone that a member terminated for that reason acts as a voluntary assignor.

---

[15]     *See Milford Power Company, LLC v. PDC Milford Power, LLC*, 866 A.2d 738, 758-62 (Del. Ch. 2004); *In re Garrison- Ashburn, L.C.*, 253 B.R. 700, 708 (Bankr. E.D. Va. 2000); *Nw. Wholesale, Inc. v. Pac Organic Fruit, LLC*, 357 P.3d 650, 656-59 (Wash. 2015).

[16]     As discussed *supra*, Section II.C.1, the NY LLC Laws do not explicitly state that a bankrupt member is terminated, let alone that a member terminated because of bankrupt status has the rights of a party that has assigned away its interest.  *Cf. Milford Power*, 866 A.2d at 742 (operating agreement stated that "[a] Member shall be deemed to have withdrawn from the Company . . . upon the occurrence of any of the following events: (a) Immediately if any Member shall (i) voluntarily file with a Bankruptcy Court a petition seeking an order for relief under the Federal bankruptcy laws . . ."); *Garrison- Ashburn, L.C.*, 253 B.R. at 704 (interpreting Virginia statute at issue, VA. CODE ANN. § 13.1–1040.1(6)(a), which states that "a member is dissociated from a limited liability company upon the occurrence of any of the following events: . . . (6) The member's: (a) Becoming a debtor in bankruptcy . . . ").

Without clearer statutory language equating a bankrupt LLC member to an assignor, there is an absence of legal justification for finding that an "assignment" has occurred. Indeed, an "assignment" is a legal term of art, and "although no particular formula is needed to create an assignment under New York law, there is a need for some 'act or words' that manifest an intent to assign." *Property Asset Mgt., Inc. v Chicago Tit. Ins. Co., Inc.*, 173 F.3d 84, 87 (2d Cir 1999) (quoting *Miller v. Wells Fargo Bank Int'l Corp.*, 540 F.2d 548, 557 (2d Cir.1976)). "In order for an assignment to be valid, the assignor must be 'divested of all control over the thing assigned.'" *In re Stralem*, 303 A.D.2d 120, 758 N.Y.S.2d 345, 347 (2d Dep't 2003) (quoting *Coastal Commercial Corp. v. Kosoff & Sons*, 10 A.D.2d 372, 376 (4th Dep't 1960)). Thus, even if the Court adopts Plaintiff's argument that a "transfer" occurs to the bankruptcy estate, there is still no basis in statute to equate that transfer by operation of law to an assignment, and there are no allegations in the Complaint that All Year intended to divest itself of its interest in YGWV by proceeding as a debtor in possession in bankruptcy.

Additionally, Plaintiff's arguments for applicability of NY LLCL § 603 are weakened by the fact that Plaintiff's cases applying similar statutes all occurred in the context of multi-member LLCs with one member filing for bankruptcy. Application of statutes like NY LLCL § 603 makes sense on those facts, given that the provisions of the NY LLC Law (and similar statutes) seem to be particularly concerned with assignments in the context of multi-member LLCs.[17] The Court is aware of other cases, however, that have rejected arguments regarding applicability of provisions like NY LLCL § 603 that restrict and qualify the ability of a member

---

[17]    The NY LLC Laws certainly contemplate the possibility of remaining members admitting an assignee as a member. *See* NY LLCL § 603(c) ("Unless otherwise provided in an operating agreement and except to the extent assumed by agreement, until the time, if any, *that an assignee of a membership interest becomes a member*, the assignee shall have no liability as a member solely as a result of the assignment."); § 604(a) ("Except as provided in the operating agreement, an assignee of a membership interest may not become a member without the *vote or written consent of at least a majority in interest of the members . . . .*") (emphasis added).

to assign their interest to single-member LLCs in bankruptcy.[18]  In fact, the court in *Modanlo*

distinguished Plaintiff's lead case, *Milford Power*, and reasoned that the Delaware LLC statute

failed to address single-member LLCs, as evidenced by its references to consent by *other*

*members* to transfer of management rights to assignees.  *See* 412 B.R. at 728–30.  The court also

noted that applying the statute to restrict the exercise of management rights by the bankruptcy

estate would lead to the absurd result of having no entity entitled to vote the corporate shares

owned by the LLC.  *Id.*

      These same issues are present here, and the Court finds the reasoning of cases like

*Modanlo* more applicable in this context.  In other words, even if the Court adopted Plaintiff's

argument that Section 541 effects a "transfer," there is no basis to find that such a transfer

necessarily effects the type of assignment described in NY LLCL § 603 on these facts.

      3.   <u>Federal Law Preempts NY LLCL §§ 603 and 701 to the Extent They Terminate or
Assign All Year's Interest Here by Operation of Law</u>

      As discussed, the filing of a bankruptcy petition does not result in termination or partial

assignment of All Year's economic and/or managerial interests under the best reading of NY

LLCL §§ 701, 603, and the YGWV LLC Agreement in this case.  In any event, even if the Court

were to find that those statutes worked a termination and/or partial assignment as an interpretive

matter, the Court finds that those statutes would be preempted by provisions of the federal

Bankruptcy Code.

      Under the Supremacy Clause, Article VI, Clause 2 of the Constitution, federal law

prevails when it conflicts with state law.  *Arizona v. United States*, 567 U.S. 387 (2012).  Under

the implied preemption doctrine, state laws are "pre-empted to the extent of any conflict with a

---

[18]    *See In re Modanlo*, 412 B.R. 715 (Bankr. D. Md. 2006), *aff'd*, 266 Fed. Appx. 272 (4th Cir. 2008); *In re Albright*, 291 B.R. 538 (Bankr. D. Colo. 2003).

federal statute.  Such a conflict occurs . . . when [ ] state law stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress." *Deutsche Bank*

*Tr. Co Ams. v. Large Priv. Beneficial Owners (In re Tribune Co. Fraudulent Conveyance Litig.)*,

946 F.3d 66, 81 (2d Cir. 2019) (citations and quotation omitted).  "The key to the preemption

inquiry is the intent of Congress."  *N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97,

104 (2d Cir. 2010) (citations omitted).

There is a presumption against preemption when Congress legislates in an area

traditionally recognized as being one of state law.  *See Hillman v. Maretta*, 569 U.S. 483, 490

(2013) (stating that because "[t]he regulation of domestic relations is traditionally the domain of

state law . . . [t]here is [ ] a presumption against pre-emption") (internal quotation marks and

citation omitted).  However, the present context is not such an area.  To understate the

proposition, the regulation of creditors' rights has "a history of significant federal presence."

*United States v. Locke*, 529 U.S. 89, 90 (2000).

The federal law at issue here is Section 541 of the Bankruptcy Code.  In relevant part,

Section 541(a) states the commencement of a bankruptcy case creates an estate that is comprised

of "all legal or equitable interests of the debtor in property as of the commencement of the case."

11 U.S.C. § 541(a)(1).  Section 541(c)(1) is also relevant to the analysis, and states that:

> [A]n interest of the debtor in property becomes property of the
> estate . . . notwithstanding any provision in an agreement, transfer
> instrument, or applicable nonbankruptcy law—
>
> (A) that restricts or conditions transfer of such interest by the debtor;
> or
>
> (B) that is conditioned on the insolvency or financial condition of
> the debtor, on the commencement of a case under this title, or on the
> appointment of or taking possession by a trustee in a case under this
> title or a custodian before such commencement, and that effects or
> gives an option to effect a forfeiture, modification, or termination of
> the debtor's interest in property.

11 U.S.C. § 541(c)(1).

Plaintiff argues for applications of New York law that would, upon filing of a bankruptcy petition: (1) "terminate" All Year's interest in Member LLC under NY LLCL § 701; and (2) strip All Year of its managerial interest in Member LLC, and as a result, terminate All Year's membership under NY LLCL § 603.  These applications are in clear conflict with Section 541 of the Bankruptcy Code.

To begin, neither party cites to any in-circuit cases addressing the preemptive effect of Section 541 on the purported termination or modification of LLC interests via state law.  With no controlling precedent, Defendants find more support in the caselaw in arguing that Section 541 preempts here.  Namely, Defendants cite to one persuasive case, *In re Prebul*, which held that an older version of NY LLCL § 701 was preempted by Section 541.  *See* 2012 WL 5997927, at *10–11 (E.D. Tenn. Nov. 30, 2012).  As Plaintiff correctly observes, an LLC member's bankruptcy filing triggered *dissolution* (as opposed to mere termination of the member) under that former version of § 701.  *Id.*  But the fact that the consequence of bankruptcy has been softened somewhat from dissolution to termination by recent amendment of NY LLCL § 701 does not alter the conclusion, given that Section 541 plainly prevents "termination" of a debtor's rights as a result of bankruptcy in any event.  Defendants also cite an additional string of bankruptcy cases finding other state laws mandating the dissociation/dissolution upon the happening of bankruptcy preempted by Section 541.[19]  With respect to NY LLCL § 701, the Court finds that these cases are directly applicable because, as is the case here, the result of

---

[19]    *See In re Dixie Mgmt. & Inv., Ltd. Partners*, 474 B.R. 698, 701 (Bankr. W.D. Ark. 2011) (holding same regarding Arkansas statute and clause in operating agreement, and noting that debtor was "permitted the use and benefit of its interest in the LLC and has the right to continue as a member of the LLC"); *In re Daugherty Constr., Inc.*, 188 B.R. 607, 611-12 (Bankr. D. Neb. 1995) (holding same regarding Nebraska statute because "[u]nder section 541(c)(1), debtor's membership in the two LLCs continues to exist, and it constitutes property of the bankruptcy estate"); *In re Klingerman*, 388 B.R. 677, 678 (Bankr. E.D.N.C. 2008) (holding same regarding North Carolina statute).

dissociation/dissolution is unavoidably in conflict with the clear text of Section 541, which prevents not only "termination" but even the milder "modification" of a debtor's interests. This conclusion is bolstered by the fact that Plaintiff has not cited to any case where a similar dissociation/dissolution statute has survived a preemption analysis.

The analysis is closer with respect to NY LLCL § 603, because at least under Plaintiff's theory, it is conceivably the "transfer" under state law, and not the filing of the bankruptcy *per se*, that triggers an assignment that steers clear of Section 541. However, this overly technical argument does not hold up under a preemption analysis that requires this Court to determine whether the "state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives'" of the Bankruptcy Code. *Hillman*, 569 U.S. at 490 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

The first glaring issue is that Plaintiff's interpretation of NY LLCL § 603 ultimately terminates All Year's membership interest, albeit only after the estate receives the economic portion of that interest. There is clearly a conflict between this result and Section 541's clear language prohibiting a "termination" as a result of bankruptcy. Plaintiff is even harder pressed to explain how the division of the interest does not work an impermissible "modification." Plaintiff finds superficial support in *Milford Power*, which held that an admittedly similar Delaware law was not preempted by the provisions of the Bankruptcy Code, because it still allowed the debtor's economic interests to flow to the bankruptcy estate. *Milford Power*, 866 A.2d at 758–62.[20] Closer inspection of the case reveals that the Court should not reach the same result here.

---

[20] In discussing *Milford Power*, *Zachman* held that the Delaware statute in question was "not preempted by the Bankruptcy Code to the extent that they divest members who file for bankruptcy of the right to participate in the management of the company but not of their economic rights." *Zachman v. Real Time Cloud Servs. LLC*, 251 A.3d 115 (Del. 2021). Even a terminated member under state law retains the ability to recover the economic interest.

First, Plaintiff misconstrues *Milford Power*'s application of the preemption doctrine.
Plaintiff praises *Milford Power*'s reasoning as "the better approach . . . that balances the
competing interests of state law and the Bankruptcy Code to arrive at a middle ground of partial
preemption." (Plaintiff Reply Brief, at 11.) This misapprehends the objective of a proper
preemption analysis. Indeed, the preemption analysis is rooted in the Supremacy Clause, and the
entire purpose is to determine whether federal law overrides state law. The court in *Milford
Power* recognized that it was "duty-bound not to ignore an 'explicit' congressional preemption
of state law or an 'unavoidable conflict' between the Bankruptcy Code and Delaware law."
*Milford Power*, 866 A.2d at 756 (quoting *Integrated Solutions, Inc. v. Service Support
Specialties, Inc.*, 124 F.3d 487, 491–92 (3d Cir.1997)). The court did not reach a "middle
ground" as a means of resolving a perceived conflict, as Plaintiff argues.

Of course, as Plaintiff observes, the caselaw is full of principles to apply when the
preemption analysis implicates interpretive issues or federalism concerns, but such concerns do
not change the analysis here.[21] Aside from the language above, the decision in *Milford Power*
provides little citation for its preemption analysis, and while it may have reached an analytical
"middle ground" according to Plaintiff, doing so is not necessarily the hallmark of a well-
reasoned preemption analysis.

Second, even if the Court assumes the balancing of state and federal interests was a
proper as a matter of preemption in *Milford Power*, the Court is not faced with the same state
interests here that were driving the court's interpretation in that case. In *Milford Power*, the

---

[21]      Plaintiff states that there is "a strong presumption against preemption," especially in an "ambiguous case."
*Nw. Wholesale, Inc. v. Pac Organic Fruit, LLC*, 357 P.3d 650, 654 (Wash. 2015) (citations omitted). As discussed
above, this is neither an ambiguous case given the plain meaning of the state and federal statutes, nor one where
Congress has legislated in an area traditionally recognized as being one of state law, warranting a strong
presumption against preemption. *See Hillman*, 569 U.S. at 490.

court stated that the state law in question "expressly recognize[d] the unique relationship that exists among members of LLCs and protects solvent members from being forced into relationships they did not choose that result from the bankruptcy of one of their chosen co-investors." *Milford Power*, 866 A.2d at 754.  As *Modanlo* pointed out, this concern is much weaker when the member filing for bankruptcy proceeds as a debtor in possession, and non-existent in the context of a single-member LLC.  *See Modanlo*, 412 B.R. at 727.[22]

Third, the federal interest in *Milford Power* was also much weaker because the preemption analysis there involved a different section of the Code with limitations on its own preemptive effect.  As discussed above, *Milford Power* held that the LLC Agreement in question was an executory contract, and thus Section 365 of the Code would control the fate of debtor's management interest.  *Milford Power*, 866 A.2d at 750–51.  The court recognized that section 365, like Section 541, generally prevents *ipso facto* clauses from divesting the rights received by the bankruptcy estate.  *Id.*  Section 365 preserves a trustee's ability to assume executory contracts.  *Id.*  Critically, however, the court observed that Sections 365(e)(2) and 365(c)(1) created exceptions to this rule, which were "an expression of Congress's recognition that certain types of executory contracts to which debtors are parties (e.g., personal services contracts) should not be assumable by a Bankruptcy Trustee in circumstances when state law would not require the non-debtor parties to accept substitute performance."  *Id.* at 751–52.

Section 541 does not make any similar exceptions to its own preemptive effect.  And in the absence of express limitations in the federal statute, this Court must "respect Congress's

---

[22]    In any event, the distinction made in *Milford Power* between the transfer of economic (as opposed to management) rights and termination of an interest is less compelling when considering that the NY LLC Laws also give terminated members a right to recoup their economic interests, because the "powers of that member may be exercised by its legal representative or successor."  NY LLCL § 608.  Surprisingly, Defendants did not brief the applicability of this section.

desire to avoid having property interests of debtors divested simply because the debtors filed for bankruptcy," as the court recognized in *Milford Power*. *Id.* at 762. Plaintiff, however, seems to be arguing for this very result, and with no countervailing state interests in support.[23]

In sum, Plaintiff's readings of NY LLCL § 603 and § 701, even if correct, would be preempted by federal law, and thus would not effect a termination or assignment as a result of All Year's bankruptcy filing.

### 4. YGWV was not dissolved due to a lack of members

On the facts alleged, All Year's interest in YGWV was neither terminated nor assigned by operation of New York law. As a result, Plaintiff's claims that YGWV has been dissolved by operation of NY LLCL § 701(a)(4) are incorrect.

### D. Claims IV and V

Claims IV and V of the Amended Complaint seek injunctive relief but are predicated on the same bases as Claims I through III for declaratory relief. Specifically, Claim IV seeks to enjoin a transfer of All Year's interest in YGWV on the both the basis that it violates the Member LLC Agreement, Delaware Law, and the implied covenant of good faith as alleged in Claims I and II and because YGWV has dissolved under New York law, rendering All Year unable to transfer the interest as alleged in Claim III. Claim V seeks to enjoin All Year and YGWV from directly or indirectly managing Member LLC, based on Claim III's allegations that YGWV has dissolved under New York Law.

---

[23]     As a final note, Plaintiff's own authorities come out differently in answering whether LLC Agreements are executory contracts such that Section 365 of the Code applies. *Compare Milford Power Company, LLC v. PDC Milford Power, LLC*, 866 A.2d 738, 758-62 (Del. Ch. 2004) (holding that Section 365 applied to the LLC agreement), *with Garrison-Ashburn, L.C.*, 253 B.R. 700, 708 (Bankr. E.D. Va. 2000) (holding that Section 365 did not apply to LLC Agreement). Neither party here posits that Section 365 applies here, and with good reason, considering that the definition "generally includes contracts on which performance remains due to some extent on *both sides*." 3 COLLIER ON BANKRUPTCY ¶ 365.02[2][a] (16th ed.2022) (quoting Countryman, Executory Contracts in Bankruptcy, 57 Minn. L. Rev. 439, 446 (1973)). With only one member to the LLC Agreement here, the contract is not executory.

As Defendants correctly observe, an "[i]njunction is not a separate cause of action; it is a remedy." *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 407 (S.D.N.Y. 2010) (citations omitted); *see also Trodale Holdings LLC v. Bristol Healthcare Invs., L.P.*, 2017 WL 5905574, at *11 (S.D.N.Y. Nov. 29, 2017).  Because Plaintiff's other claims that support the basis for injunctive relief fail, the claims for permanent injunctions cannot stand alone and must be dismissed.  *See Hauptman v. Interactive Brokers, LLC*, 2018 WL 4278345, at *9 (S.D.N.Y. June 12, 2018) ("Because all of Plaintiffs' underlying claims fail, their request for declaratory and injunctive relief is also dismissed"); *Smith v. New Line Cinema*, 2004 WL 2049232, at *5 (S.D.N.Y. Sept. 13, 2004).

## IV.  CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Plaintiff's Complaint is **GRANTED**.  Accordingly, the Plaintiff's Motion for Partial Summary Judgment on Claim III is **DENIED**.

**IT IS SO ORDERED.**

Dated:    October 4, 2022
          New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge